**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
MARIKO SHINAGAWA, individually, and on
behalf of K.D.S., an infant under the age of
fourteen (14) years,,

              Plaintiffs,

              -against-

UNITED STATES OF AMERICA,

              Defendant.
-------------------------------------------------------------x

22-CV-10173 (OTW)

**OPINION AND ORDER**

**ONA T. WANG**, **United States Magistrate Judge**:

**I.    INTRODUCTION**

Mariko Shinagawa ("Ms. Shinagawa") brought this action under the Federal Tort Claims Act, 28 U.S.C. § 2671 and § 1346(b)(1), on her own behalf and on behalf of her minor son, K.D.S., (together, "Plaintiffs") against the United States of America ("Defendant")[1] in connection with serious injuries that she and her son sustained during her pregnancy, delivery of her son, and their aftercare.  (*See generally* ECF 1).  Plaintiffs alleged, *inter alia*, that Defendant's breach of the standard of care caused their injuries.  (*See generally* ECF 1).

---

[1] Plaintiffs initially named the New York Presbyterian Hospital and various medical professionals involved in her and her child's medical care as defendants in this action.  (*See generally* ECF 1).  On September 24, 2023, the parties stipulated to dismiss certain individual defendants, namely, Drs. Sandy Lui Bui and Allan W. Ho, on the grounds that they were Public Health Service Employees of the United States, and agreed that Plaintiffs' sole remedy with regard to those doctors was against the United States.  (ECF 75).  On July 26, 2024, the parties stipulated to dismiss the Hospital, and all remaining medical professionals from the action, on the grounds that all alleged negligence was properly attributable to Dr. Bui and the United States.  (*See* ECF Nos. 100–105).  (*See also* ECF 118 at ¶¶ 3, 23–24).

Following a settlement conference before this Court on September 17, 2024, the parties reached an agreement to settle for a total award of $4,212,905.14, inclusive of attorneys' fees and disbursements.  (ECF Nos. 118 at ¶ 4, 118-4).  Under the proposed settlement, after disbursements and satisfaction of two liens (ECF 118 at ¶ 38), K.D.S. will receive 90% of the total settlement cost while Ms. Shinagawa will receive the remaining 10% (ECF 118 at ¶ 40).  (ECF Nos. 118 at ¶ 55, 118-4).  Counsel will recover 25% of the net total settlement cost in fees (ECF 118 at ¶ 53).  K.D.S. will also be enrolled in the New York Medical Indemnity Fund (the "MIF"), doubling his recovery.  (ECF 118 at ¶ 26).

After reviewing the proposed settlement (ECF 118-1), as well as Plaintiffs' submissions in support of the settlement (ECF Nos. 117, 118), the Court concludes that the settlement is fair, reasonable, and in the best interests of K.D.S.  Accordingly, the motion to approve the infant compromise order is **GRANTED**.

II.   **BACKGROUND**

A.   <u>**Relevant Factual History**</u>

The Court assumes familiarity with the facts of this case and briefly summarizes here.

In 2020, Ms. Shinagawa was pregnant with her first child, K.D.S., with a due date of September 10, 2020.  (ECF 118 at ¶ 7).  Her prenatal history was normal.  (ECF 118 ¶ 7).  Her prenatal care took place at the Charles B. Wang Community Health Center, which is a federally funded clinic, and at New York Presbyterian Hospital, where she ultimately delivered K.D.S.  (ECF 118 at ¶ 7).  On September 10, 2020, Ms. Shinagawa went into labor.  (ECF 118 at ¶¶ 8–9).  As her labor progressed, complications arose and continued to accumulate.  (ECF 118 at ¶¶ 9–12).  Plaintiffs allege that, although a Cesarean delivery was indicated, her medical team never

discussed it with her. (ECF 118 at ¶¶ 9–12). Instead, her doctor decided to perform a vacuum delivery, during which K.D.S. suffered four separate brain bleeds, extensive bruising, and bilateral clavicle fractures. (ECF 118 at ¶¶ 9–12).

K.D.S. was born on September 11, 2020. (ECF 118 at ¶ 13). His APGARs at one and five minutes were, respectively, two and seven. (ECF 118 at ¶ 13). After his delivery, K.D.S. was diagnosed with serious permanent injuries, including brain damage, hypoxic ischemic encephalopathy, sensorimotor deficits, and diplegic cerebral palsy. (ECF 118 at ¶¶ 6, 14–17). (*See also* ECF 118 at ¶¶ 28–29). K.D.S. was subsequently diagnosed with Sotos Syndrome, a genetic condition caused by a deletion of an NSD1 gene. (ECF 118 at ¶¶ 6, 17–18). He continues to suffer seizures and is at risk for epilepsy. (ECF 118 at ¶ 18). K.D.S. will likely continue to require extensive medical support throughout his life. (ECF Nos. 118 at ¶ 31, 118-3 at ¶¶ 48–50).

Ms. Shinagawa also developed severe post-partum complications, including, but not limited to, hemorrhagic shock, kidney failure, a heart attack, and PTSD. (ECF 118 at ¶¶ 6, 19–21).

B. **Procedural History**

On November 30, 2022, Ms. Shinagawa filed this action on behalf of herself and K.D.S. (ECF 1). Between filing the complaint in 2022 and beginning settlement negotiations in September 2024, the parties conducted extensive discovery, including: document productions; six depositions; and thirteen expert disclosures and reports between the parties—six from Plaintiffs, seven from Defendant—regarding liability, causation, damages, and vocation. (ECF 118 at ¶¶ 24, 53, 58–59). (*See generally* Docket). On May 17, 2024, the matter was referred to

me for settlement purposes. (ECF 84). On September 17, 2024, the parties attended a settlement conference before me, at which they reached a settlement in principle. (ECF Nos. 87, 118 at ¶ 2). (*See also* ECF Nos. 85, 86). On October 8, 2024, the parties notified the Court that they intended to submit an infant compromise order for Court approval. (ECF 109). On October 24, 2024, the parties consented to my jurisdiction for all purposes. (ECF Nos. 110, 111).

On January 7, 2025, Plaintiffs submitted a proposed infant compromise order, and moved for approval of the same. (ECF 117). Defendant has not opposed Plaintiffs' motion. (*See generally* Docket). In support of their motion,[2] Plaintiffs submit voluminous materials, including: a declaration from counsel (ECF 118); a settlement stipulation (ECF 118-1); the proposed infant compromise order (ECF 118-2); an affidavit from Ms. Shinagawa (ECF 118-3); a breakdown of the settlement (ECF 118-4); various medical expert reports (*e.g.*, ECF Nos. 118-5); excerpts of deposition testimony (*e.g.*, ECF 118-6); hospital and other medical records documenting Ms. Shinagawa's and her son's injuries and care (*e.g.*, ECF Nos. 118-7, 118-11); and numerous other exhibits. Counsel has also submitted attorney billing records under seal. (ECF 115). (*See also* ECF 118-28).

---

[2] New York Civil Practice Rule 1208 requires that the parties submit certain materials in support of an application for an infant compromise order, including: (1) an affidavit from the infant's representative, explaining the nature of the claims and injuries and stating their approval of the proposed settlement (N.Y. C.P.L.R. § 1208(a)); (2) an affidavit from the infant's attorney, explaining why they recommend the settlement (N.Y. C.P.L.R. § 1208(b)); and, in an action for damages for personal injuries to the infant, (3) one or more medical or hospital reports (N.Y. C.P.L.R. § 1208(c)). Plaintiffs have here submitted all three required items. (*See* ECF Nos. 118-3, 118, 118-7, 118-11).

C.  **The Proposed Infant Compromise Order**

At the September 17 Conference, Defendant offered to pay a total out of pocket cash settlement of $2,500,000 (the "Total Settlement Cost"), plus enroll K.D.S. in the MIF.[3]  (ECF 118 at ¶ 26).  Ms. Shinagawa accepted the offer on behalf of herself and her son.  (ECF Nos. 118 at ¶ 26, 118-3 at ¶ 25).  Plaintiffs provide a breakdown of the settlement at ECF 118-4.

Under the proposed infant compromise order, $250,000 (10%) of the Total Settlement Cost is designated for Ms. Shinagawa, and $2,250,000 (90%) is designated for K.D.S.  (ECF Nos. 118 at ¶ 26, 118-4).  Three sums will be deducted from each of Plaintiff's respective settlement costs: (1) a medical lien asserted by New York State Medicaid against each Plaintiff's recovery—$5,785.91 for Ms. Shinagawa, $9,553.90 for K.D.S. (ECF Nos. 118 at ¶¶ 38, 55, 118-4); (2) their proportionate share of disbursements, which total $112,911.72—$11,291.17 for Ms. Shinagawa, $101,620.55 for K.D.S. (ECF Nos. 118 at ¶¶ 50, 55, 118-4)[4]; and (3) their proportionate share of attorneys' fees (ECF Nos. 118 at ¶¶ 32, 55, 118-4).

Plaintiffs request that K.D.S.'s award be designated such that 50% is allocated to the MIF, as payment for future medical expenses, and 50% is designated as Non-MIF, representing pain and suffering, and lost wages.  (ECF 118 at ¶¶ 31–32).  K.D.S.'s enrollment in the MIF will

---

[3] The parties agree that this case is properly covered by and subject to the MIF pursuant to New York Public Health Law § 2999-g.  As relevant here, under New York Public Health Law, a "qualified plaintiff" is one who "has sustained a birth-related neurological injury as the result of alleged malpractice, and has settled his [] lawsuit or claim therefor," and "has been enrolled in the fund by a court in New York State."  N.Y. Pub. Health L. § 2999-h(4)(ii)–(iii).  The parties agree that K.D.S.'s neurological injuries render him a qualified plaintiff under the law.  (ECF 118 at ¶ 27).

[4] Plaintiffs' submissions at ECF 118-4 include two different disbursement totals: $112,911.72 and $111,439.85.  (ECF 118-4).  The parties have itemized their disbursements, however, (ECF Nos. 118 at ¶¶ 50–51, 118-27), and, upon review of Plaintiffs' arithmetic, the Court concludes that the $111,439.85 figure—which is not referenced elsewhere in Plaintiffs' submissions—is an isolated clerical error.

5

"double[]" his portion of the total settlement award.  (ECF 118 at ¶¶ 31–32).  In accordance with New York Public Health Law, K.D.S.'s MIF award is calculated by subtracting a proportionate 50% of his share of attorneys' fees (*see infra*) from his share of the Total Settlement Cost—that is, $2,250,000 minus 50% of his 90% share of attorneys' fees.  (ECF Nos. 118 at ¶¶ 31–32, 55, 118-4).  *See* N.Y. Pub. Health Law § 2999-j(14).  Using counsel's fee request, K.D.S.'s MIF award is $1,981,452.57.  (ECF Nos. 118 at ¶¶ 31–32, 55, 118-4).

Counsel here requests attorneys' fees totaling $596,772.07.  (ECF Nos. 118 at ¶ 53, 118-4).  Counsel's request represents 25% of the total settlement cost of $2,500,000, minus disbursements—*i.e.*, exclusive of K.D.S.'s MIF allocation—based on a contingency fee arrangement between Jacob D. Fuchsberg Law Firm, LLP, and Ms. Shinagawa and her husband (ECF 118-14).  (ECF 118 at ¶¶ 32, 53–56).[5]  Counsel has declined to seek 25% of the Total Settlement Cost, without reduction by disbursements, which would be allowable under the retainer agreement.  (ECF 118 at ¶¶ 54, 62).  Counsel also represents that they will continue to assist Plaintiffs, without charge, regarding any issues that arise relating to the MIF, even after K.D.S. is enrolled and the settlement is distributed.  (ECF 118 at ¶ 67).

The total settlement award to Plaintiffs under the proposed infant compromise is summarized thusly (*see* ECF Nos. 118 at ¶ 4, 118-4):

| **Total Settlement Cost** | **$2,500,000.00** |
|---|---|
| Settlement Cost to Ms. Shinagawa (10%) | $250,000.00 |
| Settlement Cost to K.D.S. (90%) | $2,250,000.00 |
| MIF Allocation to K.D.S. | $1,981,452.57 |
| **Total Settlement Award** | **$4,212,905.14** |

---

[5] Or, put otherwise, 23.8709% of the net total settlement cost, or 14.1653% of the net total overall settlement inclusive of K.D.S.'s MIF allocation.  (ECF 118 at ¶¶ 32, 53–56).

III.   DISCUSSION

In the Southern District of New York, settlement or termination of any action "by or on behalf of an infant" must be first approved by a court.  *See* S.D.N.Y. Local Civil R. 83.2(a)(1).  In determining whether an infant compromise should be approved, the reviewing court "shall conform as nearly as may be, to the New York State statutes and rules," (Local Civil R. 83.2(a)(1)) although the Local Rules do not impose "rigid" procedural obligations on federal district courts (*D.J. ex rel. Roberts v. City of New York*, 11-CV-5458 (JGK) (DF), 2012 WL 5431034, at *2 (S.D.N.Y. Oct. 16, 2012), *rep. and rec. adopted sub nom. Roberts v. City of New York*, 11-CV-5458 (JGK), 2012 WL 5429521 (S.D.N.Y. 2012) (citing *Neilson v. Colgate–Palmolive Co.,* 199 F.3d 642, 655 (2d Cir. 1999))).  In accordance with the applicable New York statutes and rules, courts in this district must determine: (1) whether the best interests of the infant are protected by the terms and conditions of the proposed settlement; and (2) whether the proposed settlement, including any legal fees and expenses to be paid, as part of the proposal, are fair and reasonable.  *Martegani v. Cirrus Design Corp.*, 687 F. Supp. 2d 373, 377 (S.D.N.Y. 2010) (citing Local Civil R. 83.2(a); New York Judiciary Law § 474; N.Y. C.P.L.R. §§ 1205–08).  In so doing, the court must reach an "an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated," and "form an educated estimate of the complexity, expense, and likely duration of such litigation [] and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise."  *Newman v. Stein,* 464 F.2d 689, 692 (2d Cir. 1972) (collecting cases) (internal quotation marks omitted), *cert. denied,* 409 U.S. 1039 (1972).

**A. The Settlement Is Fair, Reasonable, and in K.D.S.'s Best Interests**

Ultimately, the purpose of the infant compromise proceeding is to ensure that the proposed settlement is "fair and reasonable and in the infant plaintiff's best interests." *Martegani*, 687 F. Supp. 2d at 377 (quoting *Edionwe v. Hussain*, 777 N.Y.S. 2d 520, 522 (2d Dep't 2004). There is no bright-line test to make this determination. *Campbell v. City of New York*, 15-CV-2088 (PAE), 2015 WL 7019831, at *2 (S.D.N.Y. 2015). *See also Newman*, 464 F.2d at 692 (2d Cir. 1972) (explaining that the multifactorial analysis regarding "the propriety of [] settlement . . . is a "delicate one").

There is "a strong presumption that a settlement is fair and reasonable" where: (1) the parties reached settlement after arm's length negotiation; (2) counsel is experienced in similar cases; and (3) there has been "sufficient discovery to enable counsel to act intelligently." *I.M. by Hartmann v. DiCostanzo*, 16-CV-07608 (LJL), 2020 WL 1330241, at *3 (S.D.N.Y. 2020) (citing *Campbell*, 2015 WL 7019831, at *2 (collecting cases)). *See also T.H. v. New York City Dep't of Educ.*, 99 F. Supp. 3d 394, 397 (S.D.N.Y. 2015). The Court may also consider the complexity, expense, and likely duration of litigation, and "the risks of establishing both liability and damages." *D.J. ex rel. Roberts,* 2012 WL 5431034, at *3 (citing *City of Detroit v. Grinned Corp.,* 495 F.2d 448, 463 (2d Cir. 1974)). "Finally, courts afford significant deference to a guardian's view that the settlement reached is fair and reasonable to the infant." *Campbell*, 2015 WL 7019831, at *2 (collecting cases).

The Court finds that the terms of the proposed infant compromise order are fair, reasonable, and in K.D.S.'s best interests in accordance with the standards in this District. First, there is no evidence of collusion in this case; rather, the parties represent that the settlement

was reached after arm's length negotiation, much of which took place before this Court. (*See* ECF 118 at ¶¶ 2, 22–26). Second, the Court is more than satisfied that counsel has significant experience with medical malpractice cases of this nature, and is well-positioned to recommend this settlement to their clients. Christopher M. Nyberg, who did the majority of the work in this case, has approximately fourteen years of experience, and specializes primarily in brain injury, birth trauma, and other complex medical malpractice cases. (ECF 118 at ¶ 72). Bradley S. Zimmerman, who specializes in medical malpractice—specifically brain injuries—has over 30 years of experience, serves on the Board of Directors of the New York State Trial Lawyers Association, has given multiple lectures on brain and birth injury cases and birth trauma, and has chaired birth trauma litigation seminars. (ECF 118 at ¶ 72). Both attorneys are members of the Birth Trauma Litigation Group of the American Association for Justice. (ECF 118 at ¶ 72). They also consulted with other members of their firm on this case, including a specialist in obstetrical malpractice. (ECF 118 at ¶ 72). Third, the parties have conducted extensive discovery, including six fact depositions and wide-ranging expert discovery, which have plainly enabled counsel to act in an informed and intelligent manner with respect to settlement negotiations. (ECF 118 at ¶¶ 24, 58–59).

Furthermore, the Court finds that the terms of the compromise are adequate in light of the complexity, risks, expenses, duration, and likely rewards of litigation. *See D.J. ex rel. Roberts,* 2012 WL 5431034, at *3. The aforementioned discovery—and, thus, this litigation—is complex, involving a highly specialized and technical litigation subfield. As counsel has noted, there is not insignificant risk for Plaintiffs in proceeding to trial because they may struggle to convince a fact finder that K.D.S.'s injuries were caused by Defendant's negligence, and not by

9

his Sotos Syndrome, and that the United States should therefore be required to pay damages. (*See* ECF Nos. 118 at ¶¶ 33–34, 70, 118-3 at ¶¶ 32–35). Counsel has also accounted for Defendant's intended arguments, including that Ms. Shinagawa did not require a Caesarean delivery at the time that her medical team determined to proceed with a vacuum delivery. (*See* ECF 118 at ¶ 35). Moreover, the compromise of $2,500,000 is consistent with the wide range of awards for infant injuries of similar seriousness, and accounts for the litigation risks that inhere in the instant action. *See, e.g.*, *Grunwald v. USA*, 18-CV-3208 (JCM), 2023 WL 4967106, at *1–2 (S.D.N.Y. 2023) (awarding a total settlement of $3 million); *I.M. by Hartmann*, 2020 WL 1330241, at *3 (awarding $391,354.17, where the plaintiffs would recover an aggregate of $7 million, and where the defendant "would have had a substantial comparative negligence defense at trial").

Finally, the Court gives substantial deference to Ms. Shinagawa's affidavit attesting to her understanding of these risks, and her belief that this settlement is what is best for her son. (*See* ECF 118-3 at ¶¶ 32, 35).

**B.  The Requested Attorneys' Fees Are Reasonable**

Plaintiffs' counsel requests $596,772.07 in attorneys' fees. (ECF Nos. 118 at ¶ 53, 118-4). Counsel's request represents 25% of the total settlement cost of $2,500,000, minus disbursements, under a contingency fee arrangement they entered with Ms. Shinagawa and her husband, who is not a party to this action (ECF 118-14). (ECF 118 at ¶¶ 32, 53–56). Counsel also requests a lodestar multiplier of 2.0 to 3.0. (ECF 118 at ¶ 79).

Under New York Judiciary Law § 474, where a party requests attorneys' fees as part of an infant compromise proceeding, the court must determine whether the fees are "suitable

compensation for the attorney for his service" on the infant's behalf. *Campbell*, 2015 WL 7019831, at *4 (quoting *Allstate Ins. Co. v. Williams,* 04-CV-4575 (CLP), 2006 WL 2711538, at *4 (E.D.N.Y. 2006) (citation cleaned up)). "[T]he Court has an independent obligation to scrutinize the appropriateness of counsel's requested compensation, so as to protect the interests of the infant." *D.J. ex rel. Roberts,* 2012 WL 5431034, at *3 (citing Local Civil R. 83.2(a)(2)).

Courts treat contingency-fee agreements as "advisory only," and the court's analysis begins with the "lodestar calculation." *Campbell*, 2015 WL 7019831, at *4 (citing *White v. DaimlerChrysler Corp.,* 871 N.Y.S. 2d 170, 173 (2d Dep't 2008); *D.J. ex rel. Roberts,* 2012 WL 5431034, at *6 (citing *Millea v. Metro-N. R. Co.,* 658 F.3d 154, 166 (2d Cir. 2011))). Courts commonly use the lodestar method to create a "presumptively reasonable fee," by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany,* 522 F.3d 182, 183 (2d Cir. 2008)). "Once that initial computation has been made, the district court may, in its discretion, increase the lodestar by applying a multiplier based on other less objective factors such as the risk of litigation and the performance of the attorneys." *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 414 (2d Cir. 2010) (citing *Marriott v. Cnty. of Montgomery*, 426 F. Supp. 2d 1, 9 (N.D.N.Y. 2006)). Relevant here, where parties bring claims under the Federal Tort Claims Act, counsel is prohibited from recovering fees worth over 25% of a total settlement award. *A.F.N. v. United States*, 22-CV-8075 (PAE), 2024 WL 3634793, at *4 (S.D.N.Y. 2024). *See also* 28 U.S.C. § 2678; *Gisbrecht v. Barnhart*, 535 U.S. 789, 802 (2002). A reasonable hourly rate is defined as what a "reasonable, paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 189. This rate is informed by

11

those rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Artex Creative Int'l Corp.*, 687 F.Supp.2d at 359 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).  Once a court determines a reasonable hourly rate, it turns to the reasonableness of the hours billed, considering whether "a reasonable attorney would have engaged in similar time expenditures" and excluding excessive, redundant, or otherwise unnecessary hours.  *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992); *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).  The party seeking an award of attorneys' fees must support their request with time records for each individual involved, including the date of the work performed, the number of hours spent, and a description of the tasks completed.  *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1146–48 (2d Cir. 1983).

For the following reasons, I find that the attorneys' fees requested here are reasonable, and are suitable compensation for counsel's services.  *See Campbell*, 2015 WL 7019831, at *4

### 1. Hourly Rate

Counsel's hourly rates are reasonable.  Plaintiffs have submitted billing records for seven different timekeepers.  (ECF Nos. 115 at 32, 118-28 at 31).  Counsel's usual billing rates are as follows: $800 per hour for Mr. Nyberg; $900 per hour for Mr. Zimmerman and for Alan L. Fuchsberg, a managing partner who consulted on the matter; $750 per hour for Shannon A. Montgomery, a partner with experience litigating obstetrical malpractice cases; $500 per hour for a junior partner, Jaehyun Oh; $200 per hour for Lea Swift-Edmond, an experienced

paralegal; and $150 per hour for Jacqueline Cabrera, a staff member.[6]  (ECF Nos. 115 at 32, 118-28 at 31).  (*See also* ECF 118 at ¶ 72).  Given the attorneys' robust specialist experience in this area of law, and the complexity of this case, I find that these rates are reasonable.  (*See supra* III.A, ECF 118 at ¶¶ 69–73).

**2. Hours Spent**

Counsel's expenditure of 509 hours on this matter is also reasonable.  A review of counsel's billing records, which were filed unredacted under seal, reflects the case's complexity.  (*See* ECF 115).  Counsel represents that they: (1) met with their clients, and investigated their allegations, beginning in 2020 (*see* ECF 118 at ¶ 22); (2) facilitated service of Standard Form 95, and a supplemental SF-95 (*see* ECF Nos. 118 at ¶ 23, 118-15); (3) drafted and filed the complaint (*see* ECF 118 at ¶ 23); (4) conducted discovery (*see supra* at II.B); and (5) engaged in settlement discussions, including drafting the proposed infant compromise order and motion for approval of the same, after obtaining a favorable settlement.  (ECF 118).  (*See generally* ECF 115).  These billing records span five years, and appropriately reflect the complexity, duration, and difficulty of litigation this case.

Accordingly, the lodestar for work performed on this matter is $389,470.  (ECF Nos. 115 at 32, 118-28 at 31).[7]  Counsel's requested fee award is higher than the lodestar.  Nevertheless,

---

[6] No hourly rates were provided for associates, nor does it appear that any associates charged time to this matter.  (*See* ECF Nos. 115, 118-28).

[7] In assessing reasonableness, the Court declines to apply the requested lodestar multiplier.  It is true that lodestar multipliers between 2.0 and 3.0 are considered modest in this District.  *E.g.*, *In re Global Crossing SEC. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (approving "modest" 2.16 multiplier, and finding that 2.16 multiplier "falls comfortably within the range of lodestar multipliers and implied lodestar multipliers used for cross-check purposes"); *Maley v. Del Global Technologies Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (finding that multiplier of 4.65 is "well within the range awarded by courts in this Circuit and courts throughout the country").  *See also McDaniel*, 595 F.3d at 414.  But a

similar awards have typically been approved in FTCA cases in this Circuit involving infant compromises. *A.F.N.*, 2024 WL 3634793, at *4 (S.D.N.Y. 2024) (citing *D.L.G. v. United States*, 12-CV-7526 (RA), 2015 WL 6736163, at *2 (S.D.N.Y. 2015) ("Because the proposed attorney's fees do not exceed twenty-five percent of the total settlement, the requested fee falls within the range of acceptable compensation."); *Z.H.W. by Williams v. United States*, 12-CV-3912 (RJD) (ST), 2020 WL 813637, at *3 (E.D.N.Y. 2020) (awarding attorneys' fee under 25% cap); *Fair v. United States*, 12-CV-6062 (MKB), 2014 WL 2862658, at *1–2 (E.D.N.Y. 2014) (approving fee award of 25% of settlement net costs in FTCA case where retainer agreement would otherwise have provided for more). *See also Rodney v. City of New York*, 13-CV-6179 (RRM) (VMS) 2015 WL 1014165 at *6 (S.D.N.Y. 2015) (noting that "New York courts have generally approved payments that are one-third contingency arrangements in infant compromises") (collecting cases).

Accordingly, the Court finds that the requested fees award of $596,772.07 is reasonable, and suitable compensation for counsel's services to K.D.S. and Ms. Shinagawa.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiffs' motion to approve the infant compromise order is **GRANTED**. The Court further orders that **K.D.S. be enrolled into the MIF forthwith**. The Court also **grants the request for attorneys' fees in the amount of $596,772.07**.

---

majority of the cases in which multipliers have been applied—including the cases Plaintiffs cite—are class actions and/or shareholder litigations, not the infant compromise context, where settlement funds are paid by taxpayers. *See, e.g., id.* (*See* ECF 118 at ¶ 79).

The Clerk of Court is respectfully directed to close ECF Nos. 117 and 119, and to close the case.

**SO ORDERED.**

Dated: April 4, 2025
New York, New York

*s/Ona T. Wang*
**Ona T. Wang**
United States Magistrate Judge